## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| VESTER VON DOWNUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-278-GKF-FHM |
| | ) | |
| SYNTHES; SYNTHES USA; | ) | |
| SYNTHES HOLDING AG; JOHNSON & | ) | |
| JOHNSON; TULSA SPINE & SPECIALTY | ) | |
| HOSPITAL; DOUGLAS R. KOONTZ, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the court are the Motion to Remand [Dkt. #16] filed by plaintiff Vester Von

Downum ("Von Downum"); the Motion to Dismiss [Dkt. #1] filed by defendant Tulsa Spine &

Specialty Hospital ("Hospital"); and the Motion to Dismiss [Dkt. #12] filed by Synthes USA

Sales, LLC ("Synthes USA").

Von Downum underwent a lumbar interbody fusion with the placement of medical

devices in July 2008.  The surgery was performed at the Hospital by defendant Douglas R.

Koontz, M.D.  Van Downum alleges the medical device implants were defective and had to be

replaced in July 2009.  He filed suit in Tulsa County District Court, asserting claims of

negligence and strict liability against defendants. [Dkt. #3 at 17-19, Petition].  The Hospital filed

a Motion to Dismiss for failure to state a claim upon which relief can be granted. [Dkt. #1].

Defendants Synthes, Synthes USA and Synthes Holding AG removed the case to federal court

based on diversity jurisdiction.  In their Notice of Removal, they contend the Hospital and

Koontz, the only Oklahoma defendants, were improperly joined.[1]  After removal, Synthes USA

also filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). [Dkt. #12].  Plaintiff filed a

motion to remand, arguing the Hospital *is* a proper defendant and thus, diversity of citizenship is

lacking.  [Dkt. #16].

The issues raised in plaintiff's Motion to Remand and the Hospital's Motion to Dismiss

are intertwined.  Because the remand motion challenges subject matter jurisdiction—a

prerequisite to this court's ability to consider the motions to dismiss—the court must address it

first.

## I. Allegations of the Petition/Procedural Background

The three-page Petition alleges that Van Downum is a citizen of Oklahoma and resident

of Tulsa County, and the events giving rise to his cause of action occurred in Tulsa County. [Dkt.

#3 at 17-19, Petition, ¶¶1-2].    It alleges defendants Synthes, Synthes USA, Synthes Holding AG

and Johnson & Johnson are companies in the business of manufacturing medical devices; the

Hospital is a hospital licensed by the State of Oklahoma and located in Tulsa County; and

defendant Douglas R. Koontz, M.D. is a medical doctor licensed by the State of Oklahoma.  [*Id.,*

¶¶3-5].

The Petition alleges that in July 2008, Van Downum underwent a lumbar interbody

fusion with placement of medical device implants manufactured by defendants Synthes, Synthes

USA, Synthes Holding AG, and Johnson & Johnson.  [Dkt. #3 at 17-19, Petition, ¶6].  Defendant

Koontz placed the medical device implants in his back at the Hospital.  [*Id.*].  Van Downum

alleges that on July 22, 2009, he learned the medical devices had cracked and were damaged, and

on August 24, 2009, Dr. Koontz replaced the medical devices during a surgery on his back,

performed at the Hospital. [*Id.,* ¶7].

---

[1] Neither Koontz nor Johnson & Johnson have been served in the case.

The Petition alleges, "Due to the negligence of the defendants, the medical devices implanted back in July 2008 failed and caused the plaintiff to suffer pain and anguish and to undergo additional surgery." [*Id.,* ¶8]. The Petition states, "As a direct and proximate result of defendants' negligence, the plaintiff suffered, and continues to suffer pain and mental anguish, was forced to undergo additional surgery and incurred and continues to incur medical expenses and other damages." [*Id.,* ¶9].

Van Downum also alleges the medical device implants were defectively designed and manufactured, causing the devices to fail and causing him to suffer pain and mental anguish, undergo additional surgery and incur and continue to incur medical expenses and other damages. [*Id.,* ¶10]. He alleges, "Due to the defective devices manufactured by Defendants Synthes, Synthes USA, Synthes Holding AG, and Johnson & Johnson, the defendants are strictly liable to the plaintiff for the injuries and damages he incurred as alleged above." [*Id.,* ¶11]. He seeks an award of damages "in an amount which justly and fairly compensates him," as well as attorney fees, costs and interest. [Dkt. #3 at 19].

The Hospital filed a motion to dismiss the case, asserting Van Downum had failed to comply with 12 O.S. § 19, which requires a plaintiff in a professional negligence action to file an affidavit from a qualified expert stating that the expert, based upon a review of available material supports a finding that the acts of omissions of the defendant against whom the action is brought constituted professional negligence and the claim is meritorious and based on good cause. [Dkt. #3 at 38-40, Hospital's Motion to Dismiss]. Van Downum objected to the motion, contending he was *not* asserting a claim for professional negligence against the Hospital, but rather claims for product liability and "negligent distribution." [*Id.* at 41-52, Plaintiff's Response to Hospital's Motion to Dismiss]. The state district court denied the Hospital's motion. [*Id.* at 82, Minute

Order].  The Hospital filed a second motion to dismiss, asserting Oklahoma law does not recognize a cause of action for products liability against a hospital. [*Id.* at 83-94, Continued Special Entry of Appearance and Motion to Dismiss].  Defendants Synthes, Synthes USA and Synthes Holding AG removed the case to federal court on the basis of diversity jurisdiction, asserting the hospital and doctor had been fraudulently joined.  After removal, Synthes USA moved for dismissal for failure to state a claim [Dkt. #12], and Von Downum filed a motion to remand the case to state court.  [Dkt. #16].

## II. Motion to Remand

### A. Applicable Standard

Under 28 U.S.C. § 1447(c), "[if] at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  Since federal courts are courts of limited jurisdiction, the court must presume no jurisdiction exists absent an adequate showing by the party invoking jurisdiction. *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.,* 190 F.3d 1156, 1160 (10th Cir. 1999). The party opposing remand has the burden to show jurisdiction by a preponderance of the evidence. *Karnes v. Boeing Co.,* 335 F.3d 1189, 1194 (10th Cir. 2003).

However, a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921).  A defendant can prove fraudulent joinder by showing either (1) plaintiff's jurisdictional allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery against the non-diverse defendant. *Ryan v. State Farm Fire & Casualty Co.,* Case No. 09-CV-138-GKF-PJC, 2010 WL 56153, at *2 (N.D. Okla. Jan. 4, 2010) (citing *Dodson v. Spilada Mar. Corp.,* 951 F.2d 40; 42-43 n. 3 (6th Cir. 1992) and *Slover v.*

*Duracote Corp.,* 443 F. Supp.2d 1272, 1276 (N.D. Okla. 2006)).  To prove that a party has been fraudulently joined, the defendant has the burden to "demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court." *Hart v. Bayer Corp.,* 199 F.3d 239, 246 (5th Cir. 2000).  When a defendant raises specific allegations of fraudulent joinder, the court may pierce the pleadings to evaluate the defendant's argument.  *Smoot v. Chicago, Rock Island & Pac. R.R. Co.,* 378 F.2d 879, 881-82 (10th Cir. 1967).  "The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one."  *Hart,* 199 F.3d at 246 (quoting *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981)).  Although the court can pierce the pleadings, "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." *Smoot,* 378 F.2d at 882.

## B. Analysis

Van Downum has disavowed any claim against the Hospital for professional negligence liability.  Instead, he asserts his claims are for (1) strict product liability based on distribution of a defective product as set forth in the Restatement of Torts (Second); and (2) negligent distribution of a defective product. [Dkt. #16 at 5-11].  The parties agree that the amount in controversy in this case exceeds $75,000.  Thus, the question before the court is whether Van Downum has stated claims that are cognizable under Oklahoma law.

### 1. Strict Liability

In *Kirkland v. General Motors Corp.,* 521 P.2d 1353, 1361 (Okla. 1973), the Oklahoma Supreme Court recognized a cause of action for manufacturer's product liability against "processors, assemblers, and all other persons who are similarly situated in processing a

distribution."  Since *Kirkland,* Oklahoma courts have applied manufacturers' product liability to various members of the manufacturer's marketing chain, including retailers, dealers or distributor, importers and lessors. *Allenberg v. Bentley Hedges Travel,*  22 P.3d 223, 227-28 (Okla. 2001).[2]

Oklahoma courts have not, to date, addressed the issue of whether hospitals or doctors can be held liable based upon product liability for defective medical devices used in patient surgery or treatment.  However, Oklahoma appellate courts *have* rejected imposition of liability against health care providers based upon implied warranty provisions of the UCC.  In *Redwine v. Baptist General Convention,* 281 P.2d 1121, 1124 (Okla. Civ. App. 1982), the court held that hospital could not be held liable for breach of implied warranty under the Uniform Commercial Code for use of an allegedly defective heart-lung oxygenator because charging a patient for the use of medical equipment is not a "sale" within the meaning of the UCC, §§ 2-314 and 2—315. In so ruling, the court stated:

> This issue has been decided directly in other jurisdictions, and the great weight of authority holds that doctors and hospitals who furnish and use these products are principally engaged in the furnishing of *services* and are themselves the ultimate

---

[2] In *Allenberg,* the court explained that the theory is based on the Restatement (Second) of Torts, § 402A (1965), which states:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if
>
> > (a)  The seller is engaged in the business of selling such a product, an
> > (b)  It is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> > (a)  The seller has exercised all possible care in the preparation and sale of his product, and
> > (b)  The user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Id.* at 227 n. 6.

purchasers. The use of the equipment under these circumstances in merely incidental.

*Id.* Similarly, in *Cook v. Downing,* 891 P.2d 611, 612 (Okla. Civ. App. 1994), the court rejected a plaintiff's claim against her dentist for UCC breach of implied warranty for defective dentures concluding, "[a] dentist is not a merchant and the Uniform Commercial Code is not the law to apply to these facts."

Further, Oklahoma courts have consistently declined to hold physicians and hospitals to a standard of strict liability in professional negligence cases. *See Franklin v. Toal,* 19 P.3d 834, 838 (Okla. 2001) (holding that "the standard of care for medical providers … remains ordinary care, *not strict liability*") (emphasis added). *See also Boyanton v. Reif,* 798 P.2d 603, 604 (Okla. 1990) (holding that "the standard of care required of all physicians" is "ordinary care," and observing the standard "has not changed since statehood").

In *Hollander v. Sandoz Pharmaceuticals Corp.,* 289 F.3d 1193 (10th Cir. 2002), the Tenth Circuit, in denying a motion to certify to the Oklahoma Supreme Court the question of whether health care providers are subject to strict liability based on § 402A, noted:

> [A]n overwhelming majority of jurisdictions have refused to apply strict liability principles to claims against hospitals and physicians involving the distribution of allegedly dangerous drugs or medical devices. *See, e.g., Royer v. Catholic Med. Ctr.,* 144 N.H. 330, 741 A.2d 74 (1999) (affirming the dismissal of a products liability claim based on an allegedly defective prosthesis and reasoning that where "a health care provider in the course of rendering health care services supplies a prosthetic device to be implanted into a patient, the health care provider is 'not engaged in the business of selling' prostheses for purposes of strict products liability"); *Cafazzo v. Central Med. Health Servs., Inc.,* 542 Pa. 526, 668 A.2d 521, 525 (1995) (rejecting products liability claim based on a prosthesis and reasoning that "hospitals and physicians are not sellers, providers, suppliers, or distributors of products such as to activate 402A" and that the policy reasons for strict liability are not present; *Ayyash v. Henry Ford Health Sys.,* 210 Mich.App. 142, 533 N.W.2d 353, 354 (1995)(rejecting products liability claim against a hospital based on an allegedly defective temporomandibular joint implant and reasoning that when "a putative defendant uses a defective product in the course of providing a service, the courts must decide whether the 'transaction' is

primarily a sale or a service" and concluding that "[i]n the case of a physician or hospital rendering medical care courts typically have characterized the 'transaction' as a service" and adopting that characterization for policy reasons); *see generally* Linda A. Sharp, Annotation, *Liability of Hospital or Medical Practitioner under Doctrine of Strict Liability in Tort or Breach of Warranty, for Harm Caused by Drug, Medical Instrument, or Similar Device Used in Treating Patient,* 65 ALR 5th 357, 371 § 2(b) (1999) (noting "the continued reluctance by most courts to apply no-fault products liability principles in actions against medical defendants for injuries caused by medical products). *But see Thomas v. St. Joseph Hosp.,* 618 S.W.2d 791 (Tex.Civ.App.1981) (hospital held strictly liable where hospital gown ignited when lighted match fell on it); *Silverhart v. Mount Zion Hosp.,* 20 Cal.App.3d 1022, 98 Cal.Rptr. 187 (1st Dist. 1971) (hospital would be found liable where not engaged in activities integrally related to primary function of providing medical services-selling defective product in its gift shop).

Although Oklahoma courts do not appear to have answered this particular question, we have no reason to believe those courts would disagree with the majority rule and extend products liability to hospitals in circumstances like those in the case at bar. *Cf. Allenberg v. Bentley Hedges Travel Serv., Inc.,* 22 P.3d 223, 230-31 (Okla. 2001) (holding that commercial sellers of used products may not be held strictly liable, "at least if the alleged defect was not created by the seller, and the product is sold in essentially the same condition as when it was acquired for resale").

*Id.* at 1217-18 n. 22.

United States District Judge Terence C. Kern reached a similar conclusion in an August 15, 1996, decision in *Brewer v. Acromed Corp.,* Case No. 96-C-311-K (N.D. Okla.) (unpublished). [Dkt. #17, Ex. 1].  In *Brewer,* Judge Kern granted a motion to dismiss a claim for strict liability against St. John Hospital for an allegedly defective internal spinal fixation device implanted during surgery at the hospital.  He found that "the overwhelming weight of authority" favored defendant and "[i]t is hornbook law that a health-care provider cannot be held strictly liable for a latent defect in a medical device manufactured by a third party." [*Id.* at 2].

The court concurs with *Hollander* and *Brewer.*  The Hospital is primarily in the business of rendering health care services; it is not a member of the manufacturer's marketing chain, as

contemplated under § 402A of the Restatement (Second).  Thus, Van Downum cannot state a cognizable claim for strict liability against the Hospital.

## 2. Liability for Negligent Distribution

In his reply in support of his Motion to Remand, Van Downum argues the Petition also states a claim for negligence against the Hospital.  He asserts, "Plaintiff's negligence claims against [the Hospital] are for negligent distribution and implantation of defective medical implants into his back, causing him serious injury." [Dkt. #24 at 3] (emphasis in original).

The Petition itself, however, states only, "Due to the negligence of the defendants, the medical devices implanted back in July 2008 failed," and, "[a]s a direct and proximate result of defendants' negligence, the plaintiff suffered, and continues to suffer pain and mental anguish, was forced to undergo additional surgery and incurred and continues to incur medical expenses and other damages."  The only substantive allegations regarding the Hospital are that surgeries implanting and replacing the medical device were performed at the Hospital.

Although, under Fed.R.Civ.P. 8(a)(2),  a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss, the complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Under the *Twombly* standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to

relief." *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1965 (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. *Id.*   However, a court need not accept as true those allegations that are no more than "labels and conclusions." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), citing *Twombly*, 127 S.Ct. at 1964, 1965, 1974.

Van Downum's Petition does not contain factual allegations sufficient to support his conclusory allegations of negligence against the Hospital. Thus, defendants have established the Petition fails to allege any specific facts sufficient to state a plausible negligence claim under the *Twombly* standard. However, defendants have *not* shown that there is *no possibility* that Van Downum would be able to establish a cause of action against the Hospital in state court. *See Hart,* 199 F.3d at 246. It is possible that Van Downum may be able to amend his Petition to state facts sufficient to state a negligence claim against the Hospital.

In *Shue v. High Pressure Transports, LLC,* 2010 WL 4824560 (N.D. Okla. Nov. 22, 2010), United States District Court Judge Claire V. Eagan addressed a similar procedural issue. There, a truck driver for High Pressure Transports, LLC, an Oklahoma limited liability company, died in an industrial accident at a facility owned by CF Industries, Inc. ("CFI"), a foreign corporation. The decedent's mother filed suit in state court against the employer and CFI, asserting negligence and *Parret* tort claims. CFI removed the case to federal court, alleging the employer had been fraudulently joined. Plaintiff moved to remand the case and the employer moved to dismiss under Rule 12(b)(6) based on the exclusivity of workers compensation statutes. Judge Eagan held that while plaintiff's petition failed to meet *Twombly's* "plausibility" standard,

"the issue when determining whether a party has been fraudulently joined is whether the plaintiff has *any* possibility of recovery against the non-diverse party," and these were "distinct inquiries." *Id.,* at *7 n. 2.  She concluded the plaintiff's failure to allege a claim under the *Twombly* standard did not foreclose the possibility of recovery for the purpose of a fraudulent joinder analysis, held that the deficiencies in the petition did not justify dismissal with prejudice, and remanded the case to state court. *Id.,* at *7.

Similarly, in this case, while the Petition fails to meet *Twombly* pleading standards, it is possible Van Downum could allege facts sufficient to state a plausible negligence claim against the Hospital.  The Hospital has not met its heavy burden to show that Van Downum fraudulently joined the Hospital as a party, and this case must be remanded to state court for further proceedings.

### III. Conclusion

For the reasons set forth above, plaintiff's Motion to Remand [Dkt. #16] is granted.  This court defers disposition of the Hospital's Motion to Dismiss [Dkt. #1] and the Motion to Dismiss of Synthes USA [Dkt. #16] to the state district court.

The Court Clerk is directed to remand the case to the District Court of Tulsa County.

ENTERED this 8th day of November, 2012.


GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

11